UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MCHIGAN
SOUTHERN DIVISON

ALAN BAYNES

        Plaintiff,

                                      Case No. 12-cv-14289

v.                                   Honorable Linda V. Parker

MACOMB COUNTY SHERIFF
DEPUTY BRANDON CLELAND,
MACOMB COUNTY SHERIFF
DEPUTY FRANK MAIORANA,
and COUNTY OF MACOMB,

        Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

      On September 26, 2012, Plaintiff Alan Baynes filed this lawsuit claiming

violations of his civil rights under 42 U.S.C. § 1983.  Defendants are Macomb

County Sheriff Deputies Brandon Cleland ("Deputy Cleland") and Frank Maiorana

("Deputy Maiorana") and the County of Macomb ("County") (collectively

"Defendants").  The matter was originally assigned to the Honorable Arthur J.

Tarnow.  On May 28, 2014, Judge Tarnow reassigned the matter to the

undersigned pursuant to Administrative Order 14-AO-030.

      This action arises from Plaintiff's arrest for domestic violence following a

traffic stop and his brief incarceration in the Macomb County Jail.  In his two

count Complaint, Plaintiff asserts that Deputy Cleland and Deputy Maiorana

engaged in the excessive use of force and an unlawful search and seizure and were

deliberately indifferent to a serious medical need in violation of Plaintiff's rights

under the Fourth and Fourteenth Amendments (Count I).  He also asserts that the

County is liable because it maintains a municipal policy, custom, or practice of

deliberate indifference and failed to train or supervise its deputies (Count II).

Presently before the Court is Defendants' motion for summary judgment

pursuant to Federal Rule of Civil Procedure 56(a), filed May 12, 2014.  The motion

has been fully briefed and the Court held a hearing with respect to the motion on

August 27, 2014.  At the hearing, Plaintiff's counsel indicated that Plaintiff is not

asserting that he was arrested without probable cause.  For the reasons that follow,

the Court grants Defendants' motion.

### I. Factual and Procedural Background

During the evening of July 5, 2010, an unknown motorist saw a male

passenger in a white Chevrolet Impala repeatedly striking the female driver on

Interstate 94 ("I-94") in Harrison Township.  (Defs.' Mot., Ex. 1.)  The witness

reported this information to police dispatch, including the license plate of the car,

and Deputies Cleland and Maiorana responded to the call.  (*Id*.)  At the time, the

deputies were driving in separate patrol cars.  (Pl.'s Resp., Ex. A at 11, 21-23; Ex.

B. at 19.)  When the deputies located the suspect vehicle on I-94, around Harper,

2

Deputy Cleland initiated a traffic stop.[1]  (*Id*., Ex. B at 19-20; Defs.' Mot., Ex. 1.)
Deputy Maiorana pulled behind Deputy Cleland's patrol car.  (Pl.'s Resp., Ex. B at
20.)

The deputies then approached the passenger side door of the car and asked
the male passenger, later identified as Plaintiff, to step outside.  (*Id*.)  Plaintiff
complied and was searched for weapons, handcuffed, and placed in the back of
Deputy Cleland's patrol car.  (Defs.' Mot., Ex. 1; Ex. 2 at 47-48; Pl.'s Mot., Ex. B
at 22-23.)  Deputy Cleland next questioned the driver of the vehicle, Mary Yee
("Ms. Yee"), who stated that she is Plaintiff's long-time girlfriend.  (Defs.' Mot.,
Ex. 1.)  Ms. Yee initially denied that anything problematic occurred between her
and Plaintiff before the traffic stop.  (*Id*.)  She changed her story,  however, when
the deputies told her what the witness had reported, stating that Plaintiff grabbed
her arm while she was driving over an argument about leaving a party.  (*Id*.)  Both
deputies saw a bruise from Ms. Yee's shoulder to elbow, about six to seven inches
long.  (*Id*.)  They noted that the area also appeared to be red and swollen, with light
scratches.  (*Id*.)  No pictures, however, were taken of Ms. Yee's injuries.  (Pl.'s
Resp., Ex. A at 25; Ex. B at 21.)

Deputy Cleland then spoke with Plaintiff.  (Defs.' Mot., Ex. 1.)  Plaintiff
first admitted to having an argument with Ms. Yee, but then said there were no

---

[1] In Macomb County, I-94 hits Harper Avenue near exit 234a.  *See*
www.google.com/maps.

3

problems and that no assault had occurred.  (*Id.*)  Deputy Cleland then transported

Plaintiff to the Macomb County Jail.  (Pl.'s Resp., Ex. A at 28.)  Plaintiff claims

that during ride to the jail, he complained that the handcuffs were too tight and

were causing discomfort.  (Defs.' Mot., Ex. 2 at 49, 50.)  Although Plaintiff could

not recall during his deposition what Deputy Cleland said in response, Plaintiff

"thinks" the deputy said "something like they're not too tight or that if he loosens

them up, [he']ll be able to get out of them or something like that."  (*Id.*)  Plaintiff's

handcuffs remained on while jail personnel searched him, but they were removed

once he was placed in a cell.  (*Id.*)

Before the incident, Plaintiff was plagued with memory loss, chronic fatigue,

and severe breathing problems that can be triggered by exposure to many things.

(*Id.* at 22, 25.)  He claims that these conditions were caused by his exposure to

toxic mold while living in a condominium in St. Clair Shores, Michigan, from

2004 to 2009.  (*Id.* at 19.)  He allegedly takes fifteen medications for his medical

ailments, including pills and inhalers.  (*Id.* at 30, 34.)

Plaintiff contends that he told Deputy Cleland that he needed his medication

while being transported to the jail and/or during his intake at the jail.  (*Id.* at 29,

49.)  Plaintiff testified that he was told "not now" or "don't worry about it."  (*Id.* at

29.)  While jail personnel were searching Plaintiff, they found a little bag

containing some of the pills that he takes.  (*Id*. at 52.)  Plaintiff recalls that he

thereafter was allowed to take his medication with a glass of water.  (*Id*. at 54.)

Plaintiff was released from the jail around 6:00 p.m. the next day (i.e., July

6, 2010).  (Defs.' Mot., Ex. 3.)  He was charged with domestic violence, but the

charges were dismissed on September 8, 2010, when Ms. Yee failed to appear for

trial.  (*Id*., Ex. 4.)

Plaintiff filed this lawsuit on September 26, 2012, alleging that he sustained

severe and permanent injuries to his wrist as a result of being handcuffed on July 5,

2010.  (Compl. ¶ 12.)  He also alleges that Defendants refused to provide him his

medications while he was in jail.  (*Id*. ¶ 14.)  Plaintiff claims that his exposure to

mold while incarcerated exacerbated his asthma condition.  (*Id*. ¶ 16.)  Apparently

Plaintiff's doctor informed him that there is mold in the jail and he claims "[i]t was

in all of the newspapers."  (*Id*., Defs.' Mot., Ex. 2 at 35-36.)

During his deposition in this matter, when asked what conditions he suffered

as a result of not having his medications in jail, Plaintiff stated that his "condition

worsened."  (Defs.' Mot., Ex. 2 at 34.)  When asked what condition, he said his

memory, constipation, and fatigue.  (*Id*.)  Plaintiff's subsequent answers, however,

reflect that he believes it was the exposure to mold in the jail exacerbated his

conditions rather than the failure to take certain medications during his

incarceration.  (*Id*. at 35-36.)

## II. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

6

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. Applicable Law and Analysis

### A.  Plaintiff's Claim Against the Deputies

In order to succeed on a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must establish: " '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.' " *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).  There does not appear to be any dispute in this case that the deputies were acting under color of state law. Thus the Court will focus on the first element of Plaintiff's claim.

### 1. Excessive Force

Plaintiff alleges that Defendants engaged in excessive force by handcuffing him too tightly.  Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S.

7

386, 395 (1989).  To determine whether the force used during a particular seizure was reasonable, the court must seek to balance the nature of the intrusion on the individual's Fourth Amendment interests against countervailing governmental interests.  *Id.* at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)).

"The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure."  *Miller v. Sanilac Cnty.*, 606 F.3d 240, 252 (6th Cir. 2010) (citing *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).  The Sixth Circuit has explicitly stated that:

> In order for a plaintiff's handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: "(1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing."

*Miller*, 606 F.3d at 252 (quoting *Morrison,* 583 F.3d at 401) (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005)).

Plaintiff presents evidence to create an issue of fact with respect to whether he complained that the handcuffs were too tight.  Plaintiff's complaints, however, were directed to Deputy Cleland, while he was transporting Plaintiff to the jail.  There is no evidence that Deputy Maiorana was present at any time when Plaintiff complained about the tightness of his handcuffs.  Thus his excessive force claim

8

against Deputy Maiorana must be dismissed. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) ("To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in the use of excessive force.)).

In their summary judgment motion, Defendants argue that the deputies did not ignore Plaintiff's complaints about the handcuffs because he responded that they were not too tight and that if they were loosened, Plaintiff could get out. (Defs.' Br. in Supp. of Mot. at 7.)  This evidence, however, fails to show that Defendant Cleland did not ignore Plaintiff's complaints.  In other words, the Court does not believe that a plaintiff must prove that the officer said nothing in response to the plaintiff's complaints to demonstrate that they were ignored.  A callous or dismissive response from the officer may be sufficient evidence to lead a reasonable juror to conclude that the second prong of the plaintiff's claim is satisfied.  *See Morrison*, 583 F.3d at 203 (finding that the plaintiff could "easily satisfy" the second prong of her excessive force claim where, although the officer "claimed he responded to the complaint by sticking his finger in between the handcuffs and [the plaintiff's] skin to make sure [the handcuffs] were not 'too tight,'" he said that "he could place the handcuffs on 'as tight as he wanted to and that's how they were staying.'") The jury would have to believe Deputy Cleland

9

that the handcuffs in fact were not too tight to conclude that he was responding to Plaintiff's complaints.  The Court does not make credibility determinations on summary judgment.  *Anderson*, 477 U.S. at 252.

Defendants also argue in their motion, however, that Plaintiff fails to offer medical evidence to show that he experienced some physical injury as a result of the handcuffs.  Plaintiff testified at his deposition in this matter that he could not feel his fingers due to the tightness of the handcuffs and that he sometimes still cannot feel his fingers.  (Defs.' Mot., Ex. 2 at 59.)  Defendants argue that Plaintiff's conclusory statements concerning his injury from the handcuffs is insufficient without medical support to satisfy the third prong of his claim, citing *Mason v.* Adams, No. 05-72346, 2007 WL 162192 (E.D. Mich. Jan. 17, 2007) (citing *Hannula v. City of Lakewood*, 907 F.2d 129 (10th Cir. 1990)).  Yet Sixth Circuit precedent establishes that Plaintiff's evidence is sufficient to take the matter to the jury.

For example in *Morrison*, the appellate court held that the plaintiff's testimony that she suffered wrist marks and bruising from the handcuffs was sufficient on its own to establish the necessary "physical injury."  583 F.3d at 402 (citing *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir.1997) (reversing district court's grant of qualified immunity to officer-defendant on the plaintiff's excessive force claim based on handcuffing where the plaintiff complained that his

10

hands had become numb and swollen during a twenty-minute ride to the jail and a fifteen-minute wait in a holding cell, "notwithstanding the absence of evidence that [the plaintiff] continued to suffer numbness and swelling after the handcuffs were removed.)).  Similarly in *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002), although ultimately granting qualified immunity to the defendant-officer because he immediately removed the handcuffs once the plaintiff complained of tightness, the Sixth Circuit emphasized that

> applying handcuffs so tightly that the detainee's hands become numb and turn blue certainly raises concerns of excessive force. Our precedents allow the plaintiff to get to a jury upon a showing that officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight.

*Id*. at 944-45.  Moreover, in response to Defendants' motion, Plaintiff offers medical records indicating that shortly after his release from jail, he treated with Dr. Samson Samuel for his injury and was diagnosed with "bilateral radial sensory neuropathy from handcuffs" and was required to wear wrist braces for approximately a year following the incident.  (Pl.'s Resp., Ex. C.)

The Court therefore concludes that Deputy Cleland is not entitled to summary judgment with respect to Plaintiff's excessive force claim.  Defendants also assert qualified immunity in defense of Plaintiff's claim.  Qualified immunity shields a defendant from civil liability unless the plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was

11

'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*,

131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)).

At the time of Plaintiff's arrest, a generalized right to be free from unduly

tight handcuffing was "clearly established." *Burchett*, 310 F.3d at 945 (citing

*Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001)). Nevertheless, the

Supreme Court has advised that a more particularized inquiry is necessary, asking

"whether it would be clear to a reasonable officer that his conduct was unlawful *in

the situation he confronted*." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (emphasis

added). Engaging in such an inquiry, the Sixth Circuit Court of Appeals in *Fettes

v. Hendershot*, 375 F. App'x 528, 533-34 (6th Cir. 2010), granted qualified

immunity to the defendant officers. The *Fettes* court explained:

> Our precedents fail to notify officers that any response to a
> complaint of tight handcuffing other than an immediate one
> constitutes excessive force. Indeed, a constitutional requirement
> obligating officers to stop and investigate each and every utterance of
> discomfort and make a new judgment as to whether the handcuffs are
> "too tight" is neither reasonable nor clearly established. Here, the
> short duration of the trip, adherence to police handcuff protocol, and
> absence of any egregious, abusive, or malicious conduct supports the
> reasonableness of the officers' conduct. Moreover, unlike other cases
> in which we have denied qualified immunity, the officers here acted
> without malice and with reason-they declined to loosen the handcuffs
> in light of the short, ten-minute transport to the police station. . . .
>
> At the very worst, the decision not to pull over the vehicle and
> readjust Fettes's handcuffs during the ten-minute trip to the station
> falls in the "hazy border between excessive and acceptable force"

along which qualified immunity operates to shield officers from
discretionary, on-the-spot judgments.

*Id.*

The Court finds that Deputy Cleland is entitled to qualified immunity. As an
initial matter, there is no evidence suggesting that Deputy Maiorana did not follow
proper handcuffing procedures when he handcuffed Plaintiff. In fact Deputy
Maiorana testified that he in fact did so. (Pl.'s Resp., Ex. B at 22.) Notably,
Deputy Maiorana is an actual instructor on handcuffing and he explained in detail
during his deposition how to properly handcuff a suspect. (*Id.* at 11-14.)

Further, according to Plaintiff's testimony, he complained about the
tightness of the handcuffs only once, while he was in the patrol car and on the way
to the police station. Plaintiff does not recall exactly what Deputy Cleland said in
response to his complaints, but the deputy did say something. It is not evident how
long Plaintiff was in the patrol car from the time he complained until they reached
the Macomb County Jail, although the Court can take judicial notice of the fact that
the total distance between the location of the traffic stop and the jail is only
approximately seven miles.[2] *See* www.google.com/maps. Plaintiff did not
complain again. The absence of any egregious, abusive or malicious conduct
supports the reasonableness of the deputy's conduct. Finally, once they arrived at

---

[2] If Deputy Cleland was traveling only 25 m.p.h. (although he most likely was
driving faster), he would have reached the jail in less than 20 minutes.

13

the jail, Deputy Cleland turned over Plaintiff to the booking officer.  (Pl.'s Mot.,

Ex. B at 33-34.)  Under these circumstances, a reasonable officer would not have

known that he was violating the individual's Fourth Amendment rights.

### 2. Deliberate Indifference Claim

A prison official violates an inmate's Eight Amendment right to be from

cruel and unusual punishment when the official acts with deliberate indifference to

the inmate's serious medical needs.  *Rouster v. Cnty. of Saginaw*, 749 F.3d 437,

446 (6th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The

Eight Amendment's protections extend to pretrial detainees by operation of the

Due Process Clause of the Fourteenth Amendment.  *Rouster*, 749 F.3d at 446.  A

"deliberate indifference" claim has both an objective component and a subjective

component.  *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

To satisfy the objective component, the plaintiff must show that the medical

issue at hand is "sufficiently serious."  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994).  This means that it "is 'one that has been diagnosed by a physician as

mandating treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention.' "  *Santiago v. Ringle*, 734 F.3d

585, 590 (6th Cir. 2013) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir.

2008)).  However, where the plaintiff's claim is based on "the prison's failure to

treat a condition adequately, or where the prisoner's affliction is seemingly minor

14

or non-obvious," the plaintiff  is required to "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Id*. (internal quotation marks and citations omitted).

The subjective component requires proof that the defendant possessed a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.  This means that the official "(1) 'subjectively perceived facts from which to infer substantial risk to the [inmate],' (2) 'did in fact draw the inference,' and (3) 'then disregarded that risk.' " *Santiago*, 734 F.3d at 591 (quoting *Comstock*, 273 F.3d at 703) (citing *Farmer*, 511 U.S. at 837).

Here, Plaintiff has established a "sufficiently serious" medical need in that his medical problems were diagnosed by a physician and mandated treatment. There is no evidence, however, that Plaintiff was denied medical treatment by Defendants for his serious medical needs.  He initially claimed that he was not allowed to take his medications; however, he later testified that he in fact was provided a glass of water to take his pills.  He neither claims nor demonstrates an injury resulting from his inability to take other pills.  Plaintiff also claims that his severe respiratory condition worsened due to his exposure to mold at the jail. There is no evidence, however, that he demonstrated any breathing problems while incarcerated or that Defendants were aware of any problems requiring a response.

15

For these reasons, Defendants are entitled to summary judgment with respect to Plaintiff's deliberate indifference claim.

## B. Plaintiff's Claim Against the County

Plaintiff alleges that a County policy, custom, or practice of deliberate indifference and failure to train or supervise resulted in the violations of his constitutional rights.  Defendants seek summary judgment with respect to Plaintiff's claim, arguing that he lacks evidence of a County policy or custom that was the moving force behind the alleged constitutional violations and evidence of the County's insufficient training or supervision.  As the Court has found no violation of Plaintiff's constitutional rights, there can be no municipal liability.  However even if Plaintiff established a violation, his municipal liability claim still fails.

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  To demonstrate a municipality's liability for the actions of its employees or agents, the plaintiff must show that the alleged violation of his constitutional rights occurred because of a municipal policy or custom.  *Id.*  In other words, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy."  *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987) (adopting the test

16

articulated in *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir.1984) (en banc),

cert. denied, 472 U.S. 1016 (1985)).  To show the existence of a municipal policy

or custom leading to the alleged violation, a plaintiff can identify:

> (1) the municipality's legislative enactments or official agency
> policies; (2) actions taken by officials with final decision-making
> authority; (3) a policy of inadequate training or supervision; or (4) a
> custom of tolerance or acquiescence of federal rights violations.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*,

436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Stemler*

*v. City of Florence*, 126 F.3d 856, 865 (6th Cir.1997); *Doe v. Claiborne Cnty.*, 103

F.3d 495, 507 (6th Cir.1996)).

Other than the bare and conclusory assertions in his Complaint (*see* Compl.

¶ 31), Plaintiff never identifies a policy or custom of the County that he claims

caused the alleged constitutional violations in this case.  In his response brief, he

refers vaguely to the County's failure to investigate constitutional violations and to

discipline offending officers (Pl.'s Resp. Br. at 12), but he does not refer to any

specific evidence with respect to this County or these officers.  He does not cite to

any prior instances of misconduct or allege that the County has ignored a history of

abuse.  Plaintiff's allegations are insufficient to survive a motion to dismiss, *see*

*Anthony v. Roberson*, 26 F. App'x 419, 422 (6th Cir. 2001) (citing *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (indicating "that vague and conclusory

17

allegations unsupported by material facts will not be sufficient to state such a claim under § 1983)), much less Defendants' motion for summary judgment.

Accordingly, the Court grants summary judgment to the County on Plaintiff's claim against it.

### IV. Conclusion

For the reasons set forth above, the Court finds that Plaintiff fails to present evidence to demonstrate that Defendants were deliberately indifferent to his medical needs. While the Court finds a genuine issue of material fact with respect to whether Deputy Cleland used excessive force when handcuffing Plaintiff, it holds that the deputy is entitled to qualified immunity. There is no evidence that Deputy Maiorana is liable for Plaintiff's excessive force claim violation or that a County policy or custom led to the alleged constitutional violations.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED**.

> s/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: September 3, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of

18

record and/or pro se parties on this date, September 3, 2014, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager